# WILLIAM STODDART v. S. B. PRICE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 15, 1891—Decided October 5, 1891.

(*a*) In a sheriff's interpleader, there was evidence that the claimant became the owner of the property under a prior sheriff's sale thereof as the property of Whitaker, and had let it remain with Whitaker as a loan, with the understanding that he could remove it at any time, and that Whitaker might become the owner on payment of what the property cost:

1. The testimony as to the arrangement under which the property was left with the debtor, being by parol, was solely for the consideration of the jury: Maynes v. Atwater, 88 Pa. 497; Forrest v. Nelson, 108 Pa. 487; and it was error to charge, as matter of law, that the arrangement established constituted a conditional sale, and to direct a verdict for the defendant.

2. Retention of possession by a debtor of property sold as his property at sheriff's sale, is not of itself a badge of fraud; nor does leaving the property with the debtor of itself warrant the inference that the purchaser either sold or gave it to him, so as to authorize its seizure again as the debtor's property: Maynes v. Atwater, supra.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 322 January Term 1891, Sup. Ct.; court below, No. 812 May Term 1890, C. P.

On May 19, 1890, an issue in sheriff's interpleader was ordered, wherein William Stoddart, claimant, was made plaintiff, and S. B. Price, an execution creditor of Aaron Whitaker, defendant, to determine the title to certain personal property levied upon as the property of said Whitaker. Issue joined.

At the trial on January 13, 1891, it was made to appear that on April 7, 1879, one Isaac Livingston purchased at sheriff's sale, on an execution against Aaron Whitaker, the furniture, etc., of a hotel then carried on by Whitaker in Wilkes-Barre; that, some months afterwards, Livingston sold the property thus purchased to William Stoddart, a brother-in-law of Whitaker, for $2,000; that one Paine, the owner of the hotel build-

Statement of Facts.

ing, enlarged it in 1885, and Whitaker about the same time leased an adjoining building or two in addition, and, to enable him to furnish and use the additional rooms thus obtained, Stoddart advanced to him an additional sum of money; that Whitaker continued in the business until, on an execution against him issued in May, 1890, upon a judgment confessed in favor of S. B. Price, trustee, on February 12, 1880, and duly revived, the property in dispute was levied upon by the sheriff as the property of Whitaker.   Whereupon, this issue.

Stoddart testified, inter alia, as follows :

" Q. After this assignment of property was made to you, what were the terms under which this property was left in the possession of Mr. Whitaker?   A. After I paid for it and got possession, I left it there with him, to try and make some money out of the thing and pay me if he could.   Q. What was the arrangement between you ?   A. Well, that is all the arrangement there was.   He was to go on and run this thing and try to make some money and pay me, and if I got dissatisfied with the thing, of course I was to take possession of it and dispose of it at any time it suited me.   I have been trying to get him to make some money.   Q. The arrangement was that any time you saw fit you should come and get those goods ?   A. That is it exactly ; the goods were mine and any time I choose to take them I could take them.   Q. Has any other arrangement concerning that property been made with you since that time ?   A. No, sir ; no other arrangement.   Q. After that time other furniture was put in that hotel ?   A. Yes, sir.   Q. State to the court and jury the circumstances under which that other furniture was placed there?   A. Well, that other furniture was put there as my agent.   He acted as my agent for the furniture ; bought some furniture and things and put them in there, I presume, with my money.   Q. Tell the terms of the agency ?   A. What do you mean by that?   Q. How much were you to get out of this and how much was Whitaker to get out of this ? "

Defendant's counsel: " Q. Was all this arrangment ever reduced to writing?   A. No, sir ; never reduced to writing."

Plaintiff's counsel: " Q. Now, go on and state the terms under which Whitaker became your agent and under which this additional furniture was placed in the hotel ?   A. Well,

the only agreement that we had of terms about the arrangement was this, that I was trying to help Whitaker make a living and make some money and pay me; and the old hotel was too small; he claimed to me he could not make any money and he got Mr. Paine to put up an extra building and he leased the rooms over that one, Mr. Ward now has a store, and he also leased the building of which Mr. Birbeck is the agent, I don't know whether he is the owner of the property or not. I have never seen the lease. And that place had to be furnished and the only way he could furnish it was by me to assist him and I was in and had to stay in. Q. If you did assist him, state the manner in which you assisted him. You assisted him and by your assistance this additional furniture was procured I suppose? A. This additional furniture was procured. Q. Upon what terms did he hold that additional furniture? A. He was to get a living out of this business and pay me, if he could, and when I was paid what I had put in, the thing was his. Q. Has he ever paid you anything? A. Never paid me a cent. Q. Up to the time he did pay you, what was your arrangement with respect to that furniture, whose property was it to be up to the time of his payment to you? A. Why, it was my property. Q. What were your words to Whitaker respecting that part of your bargain? A. My words to him was, go ahead and buy that property as my agent, and I would assist him in paying for it. If we could not get money enough out of this hotel in some shape, why, I would try and raise the money and help pay for it. Q. State clearly what was said at that time? A. In regard to the new furniture? Why, simply to go on and what money he could make over and above a living belonged to me until I was paid. That is all the contract there was about it. Q. State what was said as to your right to take the furniture, if anything? A. I had a perfect right at any time that I was satisfied that he was not doing right, to dispose of the furniture, take it; it was absolutely mine, you know."

Stoddart testified, further, that for the additional furnishing he had advanced to Whitaker $500, of which $300 had been paid back, and that he had in Whitaker's business $6,000 altogether.

Aaron Whitaker testified for the plaintiff:

" Q. Will you state whether this property embraced in this

schedule is also embraced in the levy upon the execution of S. B. Price, trustee, against you? A. Yes, sir; all of it. Q. With reference to this property that was returned as sold to Mr. Livingston; state what arrangement you made, if any, with Mr. Stoddart with respect to the business there and with respect to the property he purchased from Mr. Livingston? A. After he purchased the property he came over there and says, I have purchased those goods at sheriff's sale of Mr Livingston, and he says, I will leave them in your possession, and if you can pay me for them, why, I will sell them back to you, but if you cannot pay me for them they are subject for me to take any time I want them. I want that distinctly understood that they are my goods until I get my pay for them. . . . . Q. How was the hotel business run? You took the lease in your own name? A. Yes, sir. Q. Took the license in your own name? A. Yes, sir. Q. What interest did Mr. Stoddart have in that? A. All the interest he had in there was to get his money back out of the business if I ever made enough to give it to him. He let me have the furniture there as a matter of course, and if I could pay him back why he was to sell me back the furniture or do what he pleased with it. It was his furniture. It is his furniture to-day. I do not own a dollar of it. Q. And then to give the business back to you? A. Yes, sir. Q. Whether you have ever made enough out of the business to pay him anything that he ever put into the hotel? A. No, sir, I never made enough, and up to last January I am eleven hundred dollars out besides."

The defendant in the issue offered no testimony.

The case being closed on the evidence, the court, WOODWARD, J., charged the jury in part as follows:

Mr. Stoddart having thus become the owner of the personal property of Aaron Whitaker, which had been sold by the sheriff, then entered into an arrangement with Whitaker, the nature and character of which gives rise to the legal question involved in this case. The evidence as to this arrangement is contained in the testimony of Mr. Stoddart himself, and of Mr. Whitaker. There is no conflict whatever in this testimony as presented by the plaintiff; and it therefore becomes the duty of the court, if they entertain the opinion that the evidence shows no case

Charge of Court below.

in favor of the plaintiff, so to declare as matter of law. In other words, it is the duty of the court to say whether the thing done, was as matter of law, so far as regarded the rights of creditors of Whitaker, a conditional sale of the property by Stoddart to Whitaker, or a mere bailment of it, in which, while Whitaker remained the possessor and manager, the title was really in Stoddart, so that the creditors of Whitaker could acquire no title by a sale made upon a levy in May, 1890. If at the date of this levy the title to these goods was in Stoddart and not in Whitaker, then they would take nothing by a sale. But if, on the contrary, Whitaker was at the time of the levy, the real owner, then the defendant in this issue should have a verdict for the property in dispute.

[As we view this question, it is one of law, simply, and therefore for the court to decide by giving the jury what are called binding instructions on the subject.] [6] In doing this we have the satisfaction of knowing that if we err in our views of the law, the Supreme Court will correct our mistakes.

[We say to you, gentlemen, that in our judgment, the transaction between Stoddart and Whitaker, which resulted in leaving the possession and control of all this personal property in Whitaker, was not a bailment but a conditional sale ; and therefore the creditors of Whitaker had a right to seize this property, and sell it as Whitaker's. It was not a bailment, as plaintiffs ask us to hold. A bailment is defined as a delivery of goods in trust for some special object or purpose, on a contract express or implied that the trust shall be faithfully executed. The transaction, in our opinion, under the undisputed evidence, was not a delivery of goods in trust for a special object or purpose, in such a manner as to amount to what is known in the law as a bailment. A bailee is defined to be the person to whom goods are committed in trust, and who has a temporary possession and an exclusive property in them for the purposes of the trust. We cannot understand from this evidence that Mr. Whitaker stood in the position of a bailee of these goods.] [4] . . . . .

[The transaction, in the present case, is described by Mr. Stoddart and Mr. Livingston. Mr. Stoddart's statement is as follows : " After I got possession of this property I left it with Whitaker. He was to use it, and I was to have it back when-

Charge of Court below.

ever I saw fit to take it.  No other arrangement was made. After this, other furniture was put in the hotel; my money paid for it.  The arrangement was made with a view of enabling Whitaker to make a living.  The building was enlarged by Mr. Paine, the owner.  Whitaker was to get a living out of the business, and then to pay me what he owed me, and then the property was to be his.  The property was to be mine in the meanwhile," etc.  Mr. Whitaker tells the transaction substantially in the same way, stating that he took possession of this property with the undertaking and arrangement that he was to run the Exchange Hotel as usual, using this furniture for that purpose.  He was to make a living for himself and his family out of his business; if anything remained over he was to pay it to Mr. Stoddart, who had befriended him; and when he had fully paid Mr. Stoddart, then he, Stoddart, was to convey the property or sell it back to him, Whitaker; and that under this arrangement he did remain in possession of all of this property for something over ten years.  Now, while it is clear, that Mr. Stoddart has acted in all this matter in the kindest possible manner and with the best motives, and while we do not for a moment doubt the good faith of his conduct in all respects, we are still bound, in administering the law, to say to you that this transaction amounted in the eye of the law to a conditional sale of this property by Stoddart to Whitaker; and that being the case, the creditors of Whitaker would have a right to levy upon it and sell his interest in it. Entertaining these views, and regretting the hardship which befalls Mr. Stoddart, under all the circumstances of the case we say to you, as we are requested to say in a point submitted, that your verdict must be for the defendant.] [5]

We are asked by the plaintiff to charge you on the following points:

1. The record and documentary evidence in the case shows that on the seventh day of April, 1879, Isaac Livingston became the owner of certain personal property, consisting of furniture, etc., in the Exchange Hotel in the city of Wilkes-Barre, by virtue of a sheriff's sale to him on an execution against Aaron Whitaker, the occupant or keeper of said hotel, which property he afterwards sold to William Stoddart, the plaintiff, whereby (there being no evidence to the contrary) said Stoddart became the bona-fide owner of said personal property.

Charge of Court below.

Answer: That point we affirm.

2. A loan of personal property, subject to be turned into a sale by compliance with certain conditions, does not vest in the bailee such an ownership as subjects the property to levy and sale upon an execution for his debt.

Answer: We say to you that in our opinion that point is not applicable to the case, and we decline to affirm it.[1]

3. The uncontradicted evidence is that all the property levied upon under the defendant's execution, and described in his levy as being contained in rooms one to fifty inclusive, and in the parlor, reading-room, bar-room, billiard-room, dining-room and kitchen, is the same property as that which Isaac Livingston purchased at the sheriff's sale on the execution against Aaron Whitaker, and which he transferred to William Stoddart, excepting two pool tables in the billiard-room; and if the jury believe this evidence, and that Stoddart loaned this property to Whitaker, with the understanding that he (Stoddart) might take it away at any time, and with the further understanding that whenever Whitaker paid him what the property cost him, he would transfer it to him, such arrangement did not vest in Whitaker an ownership that would subject it to levy and sale on an execution for his debt; and if Whitaker's possession has been retained with this understanding, the jury should find as to this property in favor of the plaintiff.

Answer: We have substantially negatived that point in our general charge, and we now formally decline to affirm it.[2]

4. The uncontradicted evidence is that the remainder of the property contained in the defendant's levy, except the wines, liquors and cigars, was purchased by Whitaker as agent for Stoddart, and that it was retained and used by him subject to and included in the original understanding between Stoddart and himself concerning the property purchased by Stoddart from Livingston. If the jury believe this evidence, no such ownership of the new furniture was vested in Whitaker as would subject it to levy and sale for his debt, even if he made payments upon it for Stoddart, or paid to the latter a portion of the money advanced by him for the purchase, and as to this new property (except the wines, liquors and cigars) the verdict should be for the plaintiff.

Answer: In our view of the case, we cannot affirm this point, and it is negatived.[3]

Opinion of the Court.

[We therefore take the responsibility, as we feel bound to do, in this case, of saying that under the law your verdict should be for the defendant.] [7]

—The jury returned a verdict for the defendant, as directed. Judgment having been entered, the plaintiff took this appeal, assigning for error:

1–3. The answers to the plaintiff's points.[1 to 3]

4–7. The portions of the charge embraced in [ ] [4 to 7]

*Mr. Alexander Farnham* (with him *Mr. Edwin Shortz*), for the appellant.

Counsel cited: Maynes v. Atwater, 88 Pa. 496; Rohland v. Rooke, 127 Pa. 139; Myers v. Harvey, 2 P. & W. 481; Clark v. Jack, 7 W. 375; Craig's App., 77 Pa. 448; Lehigh Co. v. Field, 8 W. & S. 241; Edwards' App., 105 Pa. 103; Hineman v. Matthews, 138 Pa. 204; Brubaker v. Okeson, 36 Pa. 519; Forrest v. Nelson, 108 Pa. 488.

*Mr. H. M. Hannah* (with him *Mr. A. R. Brundage*), for the appellee.

Counsel cited: Prichett v. Cook, 62 Pa. 193; Thompson v. Paret, 94 Pa. 275; Peek v. Heim, 127 Pa. 500; Forrest v. Nelson, 108 Pa. 481; Jenkins v. Eichelberger, 4 W. 121; Martin v. Mathiot, 14 S. & R. 214; Streeper v. Eckart, 2 Wh. 302; Rose v. Story, 1 Pa. 190; Becker v. Smith, 59 Pa. 469; Stadtfeld v. Huntsman, 92 Pa. 55; Krause v. Commonwealth, 93 Pa. 418; Brunswick Co. v. Hoover, 95 Pa. 508; Summerson v. Hicks, 134 Pa. 566; Clow v. Woods, 5 S. & R. 275; Cunningham v. Neville, 10 S. & R. 201; Carpenter v. Mayer, 5 W. 483; Young v. McClure, 2 W. & S. 147; Dewart v. Clements, 48 Pa. 413; Barr v. Reitz, 53 Pa. 256; Billingsley v. White, 59 Pa. 464.

OPINION, MR. JUSTICE STERRETT:

As claimant of the property in controversy, it was incumbent on the plaintiff to prove that he was the owner thereof when it was levied on at the suit of defendant against Aaron Whitaker. For that purpose, evidence was introduced to show that, in 1879, the greater part of the property in question was taken in execution and sold by the sheriff to Isaac Livingston,

who thereupon transferred the same to plaintiff, in whom the title thereby became absolutely vested. In affirming his first point without any qualification, the court, in effect, said :

" The record and documentary evidence in the case shows that on the seventh day of April, 1879, Isaac Livingston became the owner of certain personal property, consisting of furniture, etc., in the Exchange Hotel, by virtue of a sheriff's sale to him on an execution against Aaron Whitaker, the occupant and keeper of said hotel, which property he afterwards sold to William Stoddart, the plaintiff, whereby (there being no evidence to the contrary) said Stoddart became the bona-fide owner of said personal property."

It was further shown, by the testimony of Whitaker and the plaintiff himself, that under a verbal agreement between them, the property was allowed to remain in Whitaker's possession for the purpose of enabling him to continue the business of hotel keeping, and thus support himself and family, etc. As to the terms of that agreement, there was no material conflict of testimony. The defendant offered no evidence; but, resting his defence solely on the testimony of Whitaker and the plaintiff, he contended that the agreement to which they respectively testified, was, in effect a conditional sale of the property to Whitaker; and he therefore requested the court to charge " that under all the evidence in the case, the verdict of the jury must be for the defendant." The learned judge of the Common Pleas, concurring in that view, refused to affirm plaintiff's second, third, and fourth points, and directed a verdict for defendant. That action of the court is the subject of complaint in several specifications of error.

The plaintiff's contention was that the transaction between himself and Whitaker was a bailment, and not a conditional sale; that, by its terms, no such ownership or interest in the property was vested in Whitaker as subjected the same to levy and sale on an execution against him. His points for charge, above referred to, were predicated of that view of the testimony and construction of the verbal agreement under which plaintiff permitted his property to remain in Whitaker's possession, to be used in conducting his business, etc. In the second point, the court was requested to charge that " a loan of personal property, subject to be turned into a sale by compliance with

VOL. CXLIII—35

Opinion of the Court.

certain conditions, does not vest in the bailee such an owner-
ship as subjects the property to levy and sale upon an execu-
tion for his debt." Without affirming or denying the correctness
of this legal proposition, the learned judge refused the point
solely because in his opinion it was "not applicable to the case."
He had already ruled that the transaction was a conditional
sale, and not a bailment. After referring in his third point to
the uncontradicted evidence, that all the property described in
defendant's levy, etc., except a couple of articles, is the same that
Isaac Livingston purchased at the sheriff's sale, and afterwards
transferred to him, the plaintiff requested the court to charge:

" If the jury believe this evidence, and that Stoddart loaned
this property to Whitaker, with the understanding that he
(Stoddart) might take it away at any time, and with the further
understanding that whenever Whitaker paid him what the
property cost him he would transfer it to him, such arrangement
did not vest in Whitaker an ownership that would subject the
property to levy and sale on an execution for his debt; and,
if Whitaker's possession has been retained with this understand-
ing, the jury should find, as to this property, in favor of the
plaintiff."

This point appears to be in full accord with the testimony,
and was clearly warranted thereby; and this is especially true
as to the substance of the arrangement under which the prop-
erty was permitted to remain in Whitaker's possession. The
testimony on that subject was clearly for the consideration of
the jury; and, if it had been submitted to them under proper
instructions, it is difficult to understand how they could have
reached any other conclusion than that the material facts were
as stated in that part of the point last above quoted. But,
instead of submitting any question of fact to the jury, the
learned judge held that the transaction referred to was a con-
ditional sale, and accordingly directed the jury to find for de-
fendant. In that we think there was error.

For the same reason there was also error in refusing plaint-
iff's second point, and in charging as recited in the fourth to
seventh specifications, inclusive. The testimony of Whitaker
and that of the plaintiff himself tended to prove the facts of
which the fourth point is predicated, and there was no direct
evidence to the contrary. It follows that the point should have

been affirmed, and the jury permitted to pass upon the questions thus presented.

It is not our purpose to review the evidence to which reference has been made. It is enough to know that, if the jury had been permitted to consider it, they would have been warranted in finding, as already suggested, that the property was not sold to Whitaker, but merely loaned to him, for the purpose above stated, with the understanding that plaintiff might take it away at any time; and with the further understanding that, whenever Whitaker paid him what the property cost him, it would be transferred to him; and further that the property never was so paid for, but merely remained in Whitaker's possession, with the understanding that possession thereof might be resumed by plaintiff at any time. Speaking of the arrangement, plaintiff testified: "If I got dissatisfied with the thing, of course I was to take possession of it and dispose of it at any time it suited me." Speaking of the terms on which plaintiff permitted the property to remain in his possession, Whitaker testified: "He let me have the furniture there as a matter of course, and if I could pay him back, why, he was to sell me back the furniture or do what he pleased with it. It was his furniture. It is his furniture to-day. I do not own a dollar of it." Again, in answer to the question whether he had ever made enough out of the business to pay plaintiff anything that he ever put into the hotel, he said: "No, sir; I never made enough, and up to last January I am eleven hundred dollars out besides." The agreement of the parties was oral, and, as was said in Maynes v. Atwater, 88 Pa. 497, "The sense of words used in connection with what the parties intended to express by them is exclusively for the jury to determine;" or, as the principle is stated in Forrest v. Nelson, 108 Pa. 487, "If the contract is verbal, it is, of course, the exclusive province of the jury to inquire and ascertain what the parties meant; if it is in writing, its construction is for the court." Assuming that the jury might have found the facts as claimed by the plaintiff, and strongly indicated by the evidence, the transaction was a bailment, similar in principle to that in Maynes v. Atwater, supra. In that case it was ruled that retention of possession by a former owner of personal property sold at sheriff's sale is not a badge of fraud, nor does leaving the property with the former owner warrant the inference

that the purchaser either sold or gave it to him so as to author-ize its seizure again as the debtor's property.   It follows from what has been said that the judgment cannot be sustained.

Judgment reversed, and a venire facias de novo awarded.