# Harrington *v.* Bronson, Appellant.

*Sheriff's sale—Fraud—Retention of property by defendant in execution—Agency—Duty to inquire as to extent of.*

Where a person purchases at sheriff's sale the personal property on a farm and in a store, and leaves the defendant in the execution in possession to conduct the farm and run the store as his agent, the purchaser is answerable as principal to all persons dealing or bargaining with the defendant in the execution to whom it is not known that the real arrangement between the parties is that the defendant in the execution shall use the property for his own benefit, until, if possible, he can pay for it.

Personal property on a farm and in a store were bought at sheriff's sale by a friend of the defendant in the execution, upon the understanding that the defendant's wife should be allowed to retain possession, and conduct the farm and store until the purchase money could be repaid. Defendant's son, a boy sixteen years of age, was living with his parents at the time of the sale, and he continued to live with them and work on the farm until he was of age. He testified that when he was of age he told his mother he was going to leave, and she promised him that if he would stay she would give him a farm, or that the purchaser at the sheriff's sale, for whom she was agent, would pay him for his work; that upon this promise he continued working upon the farm. The son testified that he knew nothing of the real arrangement between the purchaser and his parents. There was evidence, however, that he became indebted to the purchaser on another account and paid the debt. In an action by the son against the purchaser: *Held* (1) that the case should be submitted to the jury, and (2) that there was no duty on plaintiff to inquire into the extent of his mother's authority as agent.

*Evidence—Declarations.*

In the above case declarations of the mother made before her death, denying her agency, but not made at the time the contract was made, to plaintiff at any time, nor in his presence, are not admissible.

*Principal and agent—Powers—Evidence—Contract.*

A purchaser at sheriff's sale permitted the wife of the defendant in the execution to retain possession of the property, and conduct the business, with the understanding that he should be repaid the amount of the purchase money which he had advanced. He testified that he permitted the wife to call herself an agent so that the goods could not be levied upon by her husband's creditors; that she had only authority to sell the goods, and no power to make any contracts binding upon the purchaser. *Held*, that the evidence was sufficient to show a relation of principal and agent, and that the principal was bound by a contract made by the agent with one having no knowledge of the secret limitations upon the agent's powers.

Mr. Justice Williams and Mr. Justice Mitchell dissented.

Argued March 14, 1894.   Appeal, No. 397, Jan. T., 1894, by defendant, S. N. Bronson, from judgment of C. P. Bradford Co., Sept. T., 1891, No. 316, on verdict for plaintiff, George W. Harrington.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Affirmed.

Assumpsit for work.   Before SEARLE, P. J. of the 34th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

Defendant offered to show by J. T. Dutton, a witness for defendant, " that Mrs. L. E. Harrington said to him in 1879, and many times afterward, that she had all the profits of the goods that were sold in that store, and that she could not buy any goods on time for which Mr. Bronson would be liable, without his knowledge and consent, and that she could not run Mr. Bronson in debt without his consent.   And that Mr. Bronson had to sign all contracts by which he would be bound." Objected to, objection sustained, and bill sealed. [11]

The court charged in part as follows :

" [So that one of the main questions for you to pass upon in this case is, which is true ?   Did Mr. Bronson not only have the control of that farm and receive the products of the farm as his when they were raised, but did he employ the Harringtons to work for him in raising them, the same as any man owning a farm employs a hired man to go on there and run it and the products are his ?   If he did, then they were his agents simply in running the farm, and the products of the farm would belong to him, and the labor that was performed on the farm, either by William Harrington or his son, would be labor performed for Bronson.

"Now, I will recapitulate a little in relation to this farm hiring.   If Mr. Bronson was running this farm occupied by Harrington, and paying for the labor and receiving the crops and proceeds as his own, and the plaintiff worked upon said farm understanding that he was working for Bronson, Bronson having received the labor, the plaintiff would be entitled to recover from him the value of the same.] [7] . . . .

" [One. of the claims put forward by the plaintiff is the claim for his wife's services.   In order to entitle the plaintiff to recover for her services under the implied contract of the work

being done for Bronson and not done for the Harringtons, you must be satisfied from the evidence in the case that Bronson was not only running the farm as his own, but that he was also running the house and boarding Harrington and his wife and family, and paying for those provisions, and hiring the labor to do it, and also the dairy work on the farm. Because, if Harrington was running the house, and it was for his benefit that this domestic labor was performed, of course it would not be for Bronson to pay for. But if Bronson was running the farm and running the household, and maintaining the house and hiring the labor to cook the victuals and perform the duties of the household, then he would be responsible under the implied contract, the same as to George.] " [8]

Plaintiff's points were, among others, as follows:

"5. If the jury find from the evidence that S. N. Bronson owned and controlled the real estate, stock and goods in possession of the Harringtons and left the Harringtons to manage, sell, buy and add to, from time to time, and run said farm and store together, and they have so run the same for ten years, and upwards, without any arrangement or agreement except that the Harringtons were not to run Bronson in debt, it would be such an arrangement as would make the defendant liable to third parties dealing with the Harringtons, who had no knowledge of such secret arrangement and whose debt was contracted within the scope of their authority in managing and running said business and farm. *Answer:* Affirmed, provided such parties dealt with the Harringtons with the understanding that they were dealing with them as the agents of Bronson." [9]

" 7. If the jury believe that the defendant and L. E. Harrington and William Harrington in 1879 and subsequently caused all the real and personal property, either or both, to be transferred by sale, lease or otherwise, to the defendant, and he allowed the same to remain there and left the Harringtons in possession and charge of the same and allowed and permitted them to do business as L. E. Harrington, agent for S. N. Bronson, for the purpose of defrauding, hindering and delaying the creditors of William Harrington and L. E. Harrington, and the defendant permitted the relation to be held out to the public, and by his (the defendant's) acts and conduct he encouraged the public

to believe that he was the principal and L. E. Harrington and William Harrington were his agents, it would be such conduct as would estop him from denying the legal obligations and liability growing out of his conduct, so far as innocent third parties were concerned dealing with his supposed agents." Affirmed. [10]

Defendant's points were as follows:

" 1. That under all the evidence and the pleadings in this case the plaintiff cannot recover." Refused. [1]

" 2. That the contract of hiring as testified to by the plaintiff himself shows a hiring by the mother in her individual capacity, without any stipulation as to the length of time the service was to be performed, but for which he was to be given her farm, and was simply an agreement for the continuation of the family relation, and the expression in regard to Bronson's liability being a mere expression of her opinion, and not a contract as agent for Bronson, under the pleadings in this case, the plaintiff cannot recover." Refused. [2]

" 3. That the evidence of the plaintiff's witness, William Vibbert, if believed, that Bronson told him that Mrs. Harrington was agent for the store and William Harrington for the farm, and the alleged contract being made with Mrs. Harrington to work on the farm, she was unauthorized so to do, and therefore the plaintiff cannot recover under the pleadings in this case." Refused. [3]

" 4. It being the uncontradicted evidence on the part of the plaintiff that after the purchase by the defendant in 1879 of the personal property, the plaintiff continued to live with his father and mother as a member of the family without receiving wages, and there was no knowledge of any hiring afterwards on his account by Bronson, and no ostensible change in the family relation mentioned, calculated to put Bronson upon inquiry after the alleged hiring, it was the duty of the plaintiff to inform him of the same, and his failure so to do, coupled with the facts of his telling Bronson in 1886 and 1888 that he had received nothing and would never get anything for his labor, and during the whole time of his alleged service never calling on Bronson for pay, but paying to him money on his indebtedness and leasing from Bronson the same farm he alleges he was to have for his services, would be such a fraud upon

Bronson as would prevent a recovery in this case." Refused. [4]

"5. That even if the jury believe that the defendant said to the plaintiff if he stayed at home, etc., he, Bronson, would see that he did not lose anything; that such a promise would be within the statute of frauds and perjuries, and would not be a contract of hiring, and under the pleadings in this case the plaintiff cannot recover under that evidence of a contract." Refused. [5]

"6. It being the evidence on the part of the plaintiff that the land of Mrs. L. E. Harrington, which was owned and controlled by her, was worked together with, and the proceeds of the same put in with the proceeds of the William Harrington farm and the store, and there being but one witness on the part of the plaintiff who knew anything about under what arrangement the defendant had any of such proceeds, and that the witness, Mrs. Mary Warner, who swore that they were paid to him and the other creditors to apply on the indebtedness of the Harringtons, and the contract of hiring made by L. E. Harrington being to pay the plaintiff by giving him the Decker farm, which was owned and controlled by her,—that these facts create such a presumption, overcome by no other evidence in the case, that William Harrington and L. E. Harrington were running the farm and the store for the benefit of themselves, and had and were to have all the profits of the same, and that the plaintiff was hired to work for them, that the plaintiff cannot recover." Refused. [6]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–10) above instructions; (11) ruling; quoting bill of exceptions, and instructions.

*J. C. Ingham* and *D'A. Overton*, for appellant.—No sufficient authority is shown in Mrs. Harrington to bind Mr. Bronson by such a contract of hiring: 1 Whart. Agency, 1st ed. §§ 127, 137, 139, 146, 459; Hays & Wick v. Lynn, 7 Watts, 524; Moore v. Patterson, 28 Pa. 505; Union Refining Co. v. Bushnell, 88 Pa. 89; Ins. Co. v. Shultz, 82 Pa. 51; American Under. Ass'n v. George, 97 Pa. 241; Market Co. v. Jackson, 102 Pa. 269; Relief Ass'n v. Post, 122 Pa. 597; Ludwig & Son v. Gorsuch, 154 Pa. 414.

The Harringtons controlled and had all the profits of the store and farm. Mr. Bronson had nothing from the place except what they paid him on their indebtedness to him. There was no evidence to bind defendant and it was error to submit the case to the jury: Stouffer v. Latshaw, 2 Watts, 165; Egbert v. Payne, 99 Pa. 239; Gas Co. v. Lynch, 118 Pa. 362; Calvert v. Good, 95 Pa. 65; Bank v. Wirebach, 106 Pa. 47; Express Co. v. Wile, 64 Pa. 201.

There can be no recovery against Mr. Bronson on the alleged bargain with Mrs. Harrington, it being by way of guaranty: Brandt on Suretyship, § 10; Stevenson v. Hoy, 43 Pa. 191; McQuewans v. Hamlin, 35 Pa. 517; Sutton & McNickle v. Irwine, 12 S. & R. 13; McNaughton's Ap., 101 Pa. 550; Hamill v. Purvis, 2 P. & W. 177.

This alleged bargain is within the statute of frauds: Maule v. Bucknell, 50 Pa. 52; Nugent v. Wolfe, 111 Pa. 481: Townsend v. Long, 77 Pa. 148; Reigleman v. Focht, 141 Pa. 388; Lewis v. Lumber Co., 156 Pa. 217.

There can be no recovery under the pleadings, which were on a special contract of hiring. The evidence proves a guaranty.

Mrs. L. E. Harrington had no authority to make such contract of hiring for the farm: Burgess v. Burgess, 109 Pa. 316. There was no evidence of fraud: Mayne v. Atwater, 88 Pa. 498; Stoddard v. Price, 142 Pa. 537.

The court erred in refusing to let the defendant prove the admissions of Mrs. L. E. Harrington: 5 A. & E. Ency. 366; Hunt's Ap., 100 Pa. 590; Neely v. Neely, 17 Pa. 227.

*Wm. Maxwell* and *H. F. Maynard*, for appellee.—When the proof of a contract rests upon parol evidence, its sufficiency is for the jury, and it is error for the court to withdraw it from them by peremptory instructions: Taylor v. Preston, 79 Pa. 436; Owners v. Baizley, 128 Pa. 283.

The statute of frauds does not apply when the promise is to pay the promisor's own debt, although the debt of a third person be incidentally guaranteed: Taylor v. Preston, 79 Pa. 436; Malone v. Keener, 44 Pa. 107; Nugent v. Wolfe, 111 Pa. 471.

An undisclosed principal is liable for the debts of his agent, though the latter violate the former's secret instructions not to purchase on credit: Hubbard v. Tenbrook, 23 W. N. 351.

The authority of a general agent to contract so as to bind his principal is only limited to the usual and ordinary means of accomplishing the business intrusted to him: Williams v. Getty, 31 Pa. 461: Parker v. Ins. Co., 129 Pa. 587; Whart. Agency, §§ 40, 125; Story on Agency, Bennett's ed. §§ 239, 253.

We know of no authority in Pennsylvania that will allow a party to set up an agency and then, to defeat a recovery, offer in evidence the declarations of his own agent. He might with the same propriety offer his own declarations: 1 Greenl. Ev. § 13.

When a contract is unwritten the agent's liability (and we may add the principal's) is dependent upon circumstances, and is a question for the jury: Wharton on Agency, § 491; Story on Agency, Bennett's ed. §§ 127, 160, 161, 279.

OPINION BY MR. JUSTICE DEAN, April 30, 1894:

The action was in assumpsit, brought by Harrington against Bronson to recover for work done. William Harrington, the father of plaintiff, for many years had been the owner of a farm of about 240 acres in Windham township, Bradford county. He also kept a country store. The wife of William Harrington, mother of this plaintiff, owned another farm of 159 acres in her own right. In 1879, the father, being heavily in debt, and executions levied on all his personal property, solicited Bronson to aid him in some way to save his property. Bronson consented, and, in pursuance of an arrangement between them, went to the sheriff's sale, purchased the property, and left it in possession of Harrington and his wife, to be by them used for their benefit, until, if possible, they could pay him for it, and further pay to him the amount of a debt they owed to him, and soon after Bronson took from Harrington a lease of the land. So far as appears, there was no intention on part of either to defraud anybody. It was simply the effort of a kind-hearted man to aid an embarrassed and sorely pressed debtor. Harrington and wife, after the sale, conducted the farm and store the same as before the sale. But, thereafter, the work done on the farm was done in the name of Mrs. Harrington as agent for Bronson, and the store was carried on in the same way; all this with Bronson's full knowledge and consent, although the en-

tire business, as concerned profits, was for the benefit of Harrington and his wife and their creditors.

Clearly, as to all persons dealing or bargaining with Mrs. Harrington as agent, to whom the nature of the arrangement was not known, Bronson was answerable as principal. To those who knew that he was only nominally principal, and that the business was really Mrs. Harrington's, conducted for the benefit of herself and her husband's creditors, Bronson was not answerable. George W. Harrington, the son, this plaintiff, had been at home with his parents from 1879, the date of the sheriff's sale, until October, 1885, at which date he came of age. He had married the month before. He says, some time in October of this year: "I told my mother that I had got married, and that I was going to leave and work for myself, and she told me that if I would stay there and work they would give me the Decker farm, . . . . and if they didn't give me the Decker farm, Mr. Bronson would have to pay me for my work, for she was his agent, and I stayed and worked."

He claimed that under this contract he remained with his wife upon the farm, working as a farm hand, she doing such service in the farm house and dairy as was required of a farmer's wife ; that this continued for three or four years ; that he had not been paid for his services ; further, that these services were rendered to Bronson, for whom his mother was agent. Therefore he brought suit against Bronson, and from a judgment in his favor defendant brings this appeal.

There are eleven assignments of error to the rulings of the court in the charge to the jury and answers to points. These may here, for purposes of consideration and review, be condensed into three, as follows : (1) There was no evidence sufficient to establish the relation of principal and agent between Bronson and the mother. (2) The evidence was not sufficient to establish either an express or implied promise on part of Bronson to pay plaintiff for his services. (3) The uncontroverted evidence established that plaintiff knew the real relation between his mother and defendant, and therefore the mother alone was answerable for the value of his labor.

As to the first specification of error, the testimony of Bronson himself, as to the real arrangement between him and the Harringtons, was ample to sustain the finding of the jury that

he was a principal in conducting both farm and store.  He tes-
tifies : " They (the Harringtons) wanted to keep the store go-
ing, and I would give security for some of the payments, but
only as a statement or order for the goods was submitted to me,
and I approved of it.  And in this way, getting new goods in
the store, Mrs. Harrington called herself an agent to sell the
goods and keep them from being levied upon by William Har-
rington's creditors.  She had no power or authority, only to sell
goods.  She never had nor never claimed to have any power or
authority to contract any debts, either for goods or anything
else which I would be liable for.  Mr. and Mrs. Harrington had
the profits of the store and farms, and Mr. Harrington went on
and controlled the farm, and ran it just the same as he always
had done.  I didn't have nor ask to have anything from the
farm or store, only as they paid me on their indebtedness to me.
I never had control of the farm or store.  All the interest I
had in it was to get back what I had put in."  And on cross-
examination he in substance admits that Mrs. Harrington, with
his consent, styled herself his agent in conducting the business,
otherwise the creditors of William Harrington, the husband,
would have seized the property.

That a third party may, at an open judicial sale, purchase the
personal property of an insolvent debtor, and leave it in posses-
sion of the debtor to be used by him on such terms as suits the
purchaser, so long as there is no secret transfer of title, we have
frequently decided.  There is no possible wrong done to cred-
itors in such a transaction.  The character of the sale by which
the title passes is so open and notorious that no doubt can exist
subsequently as to the ownership, and no creditor can be de-
ceived by giving credit on the faith of a possession of chattels
in one not the owner ; and as the purchaser presumably pays
the value of the property, and this value goes in cash to the
execution creditor, the latter is not wronged.  There is no rule
of law nor of public policy which prohibits a man from being
openly and honestly benevolent to an unfortunate debtor; nor
is there any such rule which imputes to real benevolence legal
fraud.  Maynes v. Atwater, 88 Pa. 498 ; Stoddart v. Price, 143
Pa. 537.  There was said by the court below nothing contrary
to this view, that we can discover.

So, while the transaction here is tainted with no illegality,

nevertheless this defendant held out Mrs. Harrington as his agent in conducting the business. True, from his statement, there was a secret limitation on the scope of her agency; but the rights of third parties dealing with her are not measured by this limitation, unless they knew of it. She being his agent to conduct the store and the farm, her authority to contract such debts as were reasonably necessary to the carrying on of the business will be implied. Her authority to employ laborers to perform the work incident to the business follows from the very nature of the agency, and the liability of Bronson for a debt for work and labor on the farm, contracted for by his agent, would be implied. The evidence as to the existence of the relation of agent and principal was abundant, and was very properly left to the jury by the court. There was too, in the statement of the plaintiff as to the oral contract, if the jury believed him, sufficient to warrant the finding of an express promise of payment, by the agent, before the work was done; this, with the evidence that the work was subsequently done on the farm conducted by the mother as agent, without doubt was for the jury. Clearly, there was evidence which could not be withheld from the jury of the agency, and of both an express and implied promise to pay for the work.

As to the third specification, while there is very much in the evidence to induce belief that it is well founded, we cannot say, in holding both court and jury to the performance of their proper functions, there was error in not giving binding instructions for defendant. The real terms of the arrangement, between plaintiff's mother and Bronson, were, under the evidence, clearly established. The only interest or expectation of benefit by Bronson was the payment of his debt. That Harrington and his wife might conduct the business without molestation from creditors, earn a living and pay their debts, he permitted himself to be held out as principal. This plaintiff, the son, lived in the house with his parents for years after the sheriff's sale, and until he was of age, at which time the alleged contract was made. His situation and connection with the parties were such as to render knowledge on his part of the real business relation between them and defendant highly probable. The facts that plaintiff worked on for several years with no demand on Bronson for payment; that afterwards he became indebted to Bron-

son on another account and paid the debt, are significant as tending to show his full knowledge that the real debtor to him was his mother and not Bronson. But he testifies positively that he knew nothing concerning the private arrangement between Bronson and his parents, and did not inquire; that he relied on his contract with his mother as the agent of Bronson. While the evidence to negative plaintiff's claim was quite strong, we think the learned judge of the court below committed no error of which we can take cognizance in submitting the conflicting evidence to the jury. If its manifest weight ought to have produced a different result, that could only be corrected on a motion for a new trial.

The point made by appellant's counsel, that it was the duty of plaintiff to inquire into the extent of the agent's authority, has no application to the facts of this case. There was no anomalous or extraordinary assertion of power here, to put the party dealing with the agent on inquiry. It was ostensibly only the ordinary contract of hiring labor necessary for conducting the farming operations of defendant on the farm supervised by the agent. As, apparently, the benefits of plaintiff's labor would inure to the advantage of the principal, there was no duty of further inquiry imposed on plaintiff.

The statement of plaintiff, under the act of 1887, sufficiently sets out the cause of action, and specifies with sufficient preciseness the particular items of plaintiff's demand. It is a " concise " statement, as provided by the act of 1806. That the evidence, besides supporting the contract of hiring at the date averred by the agent, went further, and tended to show that the mother agreed, if she did not pay him with the Decker farm, Bronson would pay him, in no manner affects the character of the contract substantially averred. Every particular that defendant, to prevent a recovery, should have denied, was clearly set out; as the evidence showed no essentially different contract, it is sufficient to sustain the judgment.

As to the eleventh assignment, embracing the alleged error in rejecting testimony of declarations by the mother in denial of her agency, she having died before trial, the ruling was correct. They were not made at the time the contract was entered into, nor made to plaintiff at any time, nor in his presence; were by one not a party to the issue, and who had no interest in it; they were clearly inadmissible.

We find in this record no error which can justify us in reversing the judgment; therefore it is affirmed, and the appeal is dismissed at costs of appellant.

MR. JUSTICE WILLIAMS and MR. JUSTICE MITCHELL dissent.